UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHELLE HEWLETT,

    Plaintiff,

v.                                        Case No. 06-CV-12496-DT

BOTSFORD GENERAL HOSPITAL,

    Defendant.
                                   /

**OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

In this racial discrimination case, Plaintiff complains that she was passed over for a promotion interview because she is black. With no interview, there obviously was no promotion, a result about which Plaintiff also complains. Pending before the court is a motion for summary judgment, filed by Defendant Botsford General Hospital on March 2, 2007. The matter has been fully briefed and the court concludes a hearing on the motion is unnecessary. *See* E.D. Mich. LR 7.1(e)(2). For the reasons stated below, the court will grant the motion.

**I. BACKGROUND**

Unless otherwise noted, the following facts were proffered by Defendant, admitted by Plaintiff Michelle Hewlett, and are therefore undisputed.

Plaintiff was an employee of Defendant since 1984, holding positions of secretary, receptionist, receiving clerk, office supervisor and office manager and generally receiving good performance evaluations. (Pl.'s Resume, Def.'s Ex. 9; Performance Reviews, Pl.'s Ex. 3.) She obtained a bachelor's degree in business administration in 1995. (Pl.'s Resume, Def.'s Ex. 9.) In her highest position as

manager of office operations for the Physical Medicine and Rehabilitation Department, Plaintiff's responsibilities included, but were not limited to, scheduling, supervising office operations, evaluating employees, maintaining files, participating in and planning employee wellness programs, preparing reports, orienting new staff, acting as a receptionist and monitoring and requisitioning new stock for the department.  (Job Description, revised June 2000, Def.'s Ex. 4.)  Several of the people who played a particularly significant role in the material facts of the case are African-American, including Plaintiff, Machele Merriweather, Defendant's corporate director of recruitment, Barbara Palmer, Defendant's corporate vice president of human resources, and Palmer's assistant, Kathy Dickerson.

In March 2004, Defendant posted an opening for corporate director of employee services.  (Job Description, revised March 2004, Def.'s Ex. 6.)  Responsibilities included, but were not limited to, providing administrative leadership, developing strategic system-wide initiatives, developing annual budgets, ensuring monthly adherence to budgets, pursuing community partnerships, participating in management training programs, directing programs to assure profitability and handling event management.  (*Id.*)  To qualify for consideration, applicants were required to have, among other things, "a minimum of five years work experience in employee services, concierge services, hospitality, or Human Resources Management."  (*Id.*)  A separate job posting set an application deadline of March 24, 2004.  (Job Posting, Def.'s Ex. 7.)

Plaintiff applied for the corporate director position.  (Pl.'s Dep. at 17, Def.'s Ex. 3.)  She completed a transfer form and received no response.  (*Id.* at 20.)  At least twelve other candidates applied and Merriweather compiled a spreadsheet listing each

candidate with some basic information. (Merriweather Dep. at 75, Def.'s Ex. 10; Spreadsheet, Def.'s Ex. 12.) Merriweather and Palmer together reviewed all of the applications and identified seven or eight applicants who were strongly qualified. (Palmer Dep. at 25-26, 33, Def.'s Ex. 11.) The other applicants, including Plaintiff, were classified as not meeting some or all of the requirements. (*Id.* at 36-37, 40-41.)

Defendant followed a selection process in which a "selection team" of Palmer and four other individuals were to conduct the interviews, which would begin with a fifteen-minute sample presentation by each candidate. (Selection Process - Draft 1.0, Def.'s Ex. 13). Palmer denied that she chose whom to interview, claiming instead that the selection team made that determination when it agreed with the evaluations she made with Merriweather. (Palmer Dep. at 26, 41.)[1] The interviews were scheduled for April 29 and 30 and May 3 and 4, 2004. (Interview Schedule, Def.'s Ex. 14.) The parties do not dispute that at least one interviewee, Lawrence Perkins, is black. The team met on May 11, 2004 to rank the interviewees. (*Id.*) Palmer and Beverly Weiss, who was leaving the position being filled, made the final employment decision after a second round of interviews with the two interviewees who ranked highest. (Applicant Scores, Def.'s Ex. 15; Palmer Dep. at 47.) Palmer announced the successful applicant for the corporate director position on June 2, 2004. (Palmer E-mail, Def.'s Ex. 16.)[2]

---

[1] Plaintiff's response brief cites record evidence that contradicts Palmer's statements about who selected the interviewees. (Pl.'s Br. at 20.) This dispute is immaterial, as, for purposes of the court's analysis, there is no dispute that Palmer at least influenced the selections.

[2] Defendant presents no record evidence substantiating its assertion that Gerson Cooper, Defendant's President and CEO, also interviewed the successful applicant before the position was filled.

As the interviews were occurring, Plaintiff called human resources "continuously . . . to find out what was going on with the job."[3] (Pl.'s Dep. at 21-22, Def.'s Ex. 3.) Plaintiff was not invited to interview for the position. (*Id.* at 24.) Plaintiff was "very distraught, not because I did not get the job . . . but distraught because I did not get an opportunity to interview for the job." (*Id.* at 29.) She requested a meeting with Palmer. (*Id.* at 39.)

Palmer's assistant Dickerson handled many of the inquiries Plaintiff made about the process of hiring. (Pl.'s Dep. at 37-38, Def.'s Ex. 3; Dickerson Dep. at 74-75, Def.'s Ex. 1.) Dickerson informed Plaintiff that she thought that Plaintiff's race was a factor. (Pl.'s Dep. at 37, Def.'s Ex. 3.) Plaintiff does not recall when she had this conversation with Dickerson, but Plaintiff did believe that they spoke by telephone. (*Id.* at 38.) According to Plaintiff:

> I don't remember at what point [Dickerson] told me about that, but she did tell me that Barb pointed to the back of her hand and said that we have enough of this in human resources . . . . And I asked her, what is "this"? And she said, blacks.

(*Id.* at 39-40.) Plaintiff conceded that Dickerson could not have demonstrated the gesture over the telephone. (*Id.* at 41.) Plaintiff further avers:

---

[3]Defendant presents e-mail correspondence between Plaintiff and Palmer. (E-Mail Messages, Def.'s Ex. 17.) Palmer sent the earliest note on May 4, 2004 at 6:28 p.m., apparently in response to Plaintiff, stating (1) that the interview process has begun, (2) that candidates with the proper background and experience will be interviewed and (3) thanking Plaintiff for her interest in the position. Based on the schedule presented to the court, (Def.'s Ex. 14), the final interview already occurred at noon on that day. On May 19, in response to a request for an update, Palmer informed Plaintiff that the interview process had concluded. (Def.'s Ex. 17.) Plaintiff responded on May 20 expressing disappointment and that same day Palmer e-mail Dickerson to schedule a meeting with Plaintiff. (*Id.*) On May 24, 2004, Dickerson e-mailed Plaintiff, asking her to call to schedule a meeting. (*Id.*)

4

> I can't remember if Kathy told me [about the gesture] in person or if she told me on the telephone. I just know that the extent of the conversation was that Barb pointed to the back of her hand and, we have enough of these, and these are to the best of my recollection the words.

(*Id.*) Defendant presents only excerpts of Palmer's deposition and it is therefore unclear if she denies the statement and gesture. Defendants appear to assume for the sake of argument that Palmer made the statement and gesture.

Dickerson recalls no specific reaction by Palmer to Plaintiff's application, other than to ask Dickerson to schedule a luncheon so that Palmer could respond to any of Plaintiff's concerns. (Dickerson Dep. at 73, Def.'s Ex. 1.) Dickerson does not recall the exact context, but she does remember Palmer returning to the office on a day when Plaintiff called to inquire about her job application. (*Id.* at 74.) No other applicants had been calling Dickerson to make the same inquiry, as most were already scheduled for interviews. (*Id.* at 75.)[4] Dickerson mentioned Plaintiff's phone call along with other messages left for Palmer. (*Id.* at 74.) Dickerson quoted Palmer as saying, "In my opinion, we have enough of these in the HR Department as it stands." (*Id.*) As Palmer made that statement, Dickerson saw her point at the back of her hand. (*Id.* at 74-75.)

Dickerson avers that she has "[n]o doubt at all" that Palmer's gesture referred to African-Americans. (*Id.* at 134-36.) According to Dickerson, she is familiar with the gesture based on personal experience, and because Palmer had used it before. (*Id.* at 80, 131-32, 135-36.) Dickerson states that the gesture is "very common" and that Palmer used it once at a conference to indicate that only a few African-Americans were present. (*Id.* at 132, 135.)

---

[4]Plaintiff called a total of six or seven times and Dickerson recalls that the calls occurred daily. (Dickerson Dep. at 78.)

5

After Defendant filled the position, Dickerson informed Plaintiff of Palmer's remark and gesture. (*Id.* at 96.) Dickerson believes the conversation occurred in the cafeteria, because they never spoke on the phone outside when Plaintiff would call to inquire about the job. (*Id.* at 97-99.) In December 2004, Dickerson wrote a letter of support for the charge of discrimination that Plaintiff filed with the Equal Employment Opportunity Commission. (12/10/04 Letter, Def's Ex. 19.) The letter contradicts Dickerson's deposition testimony to the extent that it states "various employees began to question the interviewing process, as to why they were not included." (*Id.*) Plaintiff resigned from her job on July 15, 2005. (Pl.'s Dep. at 154, 383-84.) Plaintiff filed her complaint in this court on June 5, 2006.

## II.  STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate." *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The existence of some factual dispute, however, does not defeat a properly supported motion for summary judgment; the disputed factual issue

6

must be material.  *See id.* at 252 ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict-'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'").

### III.  DISCUSSION

Defendant seeks summary judgment on Plaintiff's promotion discrimination claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq* and Michigan's Elliot-Larsen Civil Rights Act ("ELCRA"), M.C.L. § 37.2101 *et seq.* Defendant asserts that summary judgment is appropriate on both claims because Plaintiff has failed to produce evidence which could establish an actionable claim of discrimination.  Plaintiff responds that a jury question exists regarding whether Defendant impermissibly discriminated against her on the basis of her race.

Cases brought pursuant to the ELCRA are analyzed under the same evidentiary framework used in Title VII cases.  *Humenny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004); *Hall v. State Farm Ins. Co.*, 18 F. Supp. 2d 751, 766 (E.D. Mich. 1998).  In order to establish a claim of race discrimination, Plaintiff must either present direct evidence of discrimination or indirect, circumstantial evidence of discrimination through the burden shifting analysis set forth in *McDonnel Douglas Corp. v. Green*, 411 U.S. 792 (1973).  The parties first dispute whether Plaintiff has presented direct evidence of discrimination.

### A. Direct Evidence

Plaintiff argues that she has produced direct evidence which, if believed, would "demonstrate that an employer used a forbidden consideration with respect to any employment practice." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 98 (2003) (citations omitted). Defendant disagrees and argues that Plaintiff must therefore establish discrimination through circumstantial evidence and by utilizing the *McDonnel Douglas* burden-shifting analysis. 411 U.S. 792.

"In discrimination cases, direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp*, 176 F.3d 921, 926 (6th Cir. 1999) (citations omitted). "[D]irect evidence of discrimination does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." *Johnson v. Kroger Co.,* 319 F.3d 858, 865 (6th Cir. 2003). "For example, a facially discriminatory employment policy or a corporate decision maker's express statement of a desire to remove employees in the protected group is direct evidence of discriminatory intent." *Nguyen v. City of Cleveland,* 229 F.3d 559, 563 (6th Cir. 2000) (citing *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985); *LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 379-80 (6th Cir. 1993)). Once there is credible direct evidence, the burden of persuasion shifts to the defendant to show that it acted on a non-discriminatory basis." *Jacklyn*, 176 F.3d at 926 (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 244-45 (1989); *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1081 (6th Cir.1994)).

Viewed in the light most favorable to Plaintiff, the court is persuaded that the record contains direct evidence of race discrimination. Specifically, if believed, the sworn testimony of Dickerson requires the conclusion that Palmer excluded Plaintiff from the interviewing process because of her race.[5] Palmer was a key decision maker whose evaluations either influenced or determined which candidates would be interviewed and who jointly made the final hiring decision. She made her remark in response Plaintiff's telephonic inquiry. Viewed in isolation, Palmer's remark is vague. But when considered in context it can only admit of a meaning consistent with Plaintiff's complaint. Having heard of Plaintiff's inquiry,[6] Palmer said "we have enough of these in the HR Department as it stands." (Palmer Dep. at 74.) She contemporaneously pointed at the back of her hand. The court by no means relies solely on the subjective opinion of Dickerson that Palmer's gesture coupled with "enough of these" no doubt meant African Americans. But Dickerson presents two important factors that inform the context of the statement and gesture: cultural understanding and prior experience. Dickerson avers that the gesture is very common among blacks and that Palmer used it before, with the example of remarking how few blacks were present with them at a conference. Between two African-Americans who had so communicated in the past,

---

[5]The standard of review requires the court to view the evidence in the light most favorable to Plaintiff. Therefore, the court cannot accept Defendant's argument that it stretches the imagination, or is irrational to believe, that Palmer, as an African-American with no record of racial bias and who worked to advance Defendant's racial diversity initiatives, would have discriminated against a fellow African-American on the basis of race.

[6]While Dickerson's letter suggests that others also inquired about the position, there is no dispute that Plaintiff's inquiries were persistent. Further, Dickerson's letter does not contradict her testimony that only Plaintiff had inquired at the time Dickerson was reporting telephone messages to Palmer.

9

Palmer's statement and gesture, viewed in the light most favorable to Plaintiff, could only have meant that Palmer believed HR had enough blacks already.  Palmer's statement and gesture expressly communicated her desire to deny Plaintiff an interview based on her race.  It constitutes direct evidence of discrimination.

The absence of evidence supporting an alternative interpretation bolsters this conclusion.  There is no countervailing evidence suggesting, for example, that Palmer might have meant to indicate "enough" married persons, "enough" older persons or, for that matter, nothing at all.  The record makes no particular mention of any other attribute of Plaintiff's such as age or marital status as being significant in the mind of Palmer or in the context of her statement.  Further, the vague term "these" precludes the possibility that Palmer meant nothing by the gesture.  "These" requires a predicate to imbue it with meaning.  Nothing before the court suggests another predicate.  Rather, the context of the discussion reveals that Palmer was responding to Plaintiff's persistence in trying to obtain an interview and that, Palmer, by pointing to her hand, made a statement about Plaintiff's race.  The timing of the remark and its relation to the employment decision Palmer would soon face persuades the court that it was not a mere stray and non-actionable remark, or a statement by a decision maker that is unrelated to the decisional process itself.  *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989).  Plaintiff thus has presented direct evidence to support her claim of race discrimination.[7]

---

[7]The court therefore need not analyze the circumstantial evidence to determine whether Plaintiff presents a prima facie case of discrimination.  *See, e.g., Blalock v. Metals Trades, Inc.*, 775 F.2d 703, 707 (6th Cir. 1986) ("Direct evidence and the *McDonnell Douglas* formulation are simply different evidentiary paths by which to resolve the ultimate issue of [the] defendant's discriminatory intent.").

## B. Plaintiff's Qualifications

The presence of direct evidence does not foreclose the possibility of summary judgment. Once a plaintiff presents direct evidence of discrimination, assuming the jury believes it, "the burden of persuasion shifts to the employer to prove that it would have [not promoted] the plaintiff even had it not been motivated by [race]. " *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1081 (6th Cir. 1994) (citing *Price Waterhouse*, 490 U.S. at 244-45); *see also Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003); *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). Indeed, a plaintiff may prove unlawful discrimination in the same way that a plaintiff could prove any other civil case. *See e.g.*, *Hazle v. Ford Motor Co.*, 628 N.W.2d 515 (Mich. 2001).[8] It therefore stands to reason that causation, *i.e.* an impermissible racial animus actually making a difference in the decision to promote, would be a necessary component of any racial discrimination claim. Under *Price Waterhouse*, Defendant may obtain summary judgment if it meets its burden of persuasion that it would not have promoted Plaintiff even if it had interviewed her, and if Plaintiff presents no contrary evidence to call that conclusion into question. The court must therefore evaluate requirements for the position and the merits of Plaintiff's job application.

As outlined above, the corporate director of employee services was expected to perform myriad supervisory and analytical functions, and only applicants with at least five years of experience in certain areas qualified for consideration. Plaintiff conceded that she lacked five years of experience in employee services, concierge services and

---

[8]Michigan courts have held that *Price Waterhouse* analysis is equally applicable to cases arising under the Michigan Civil Rights Act. *Harrison v. Olde Financial Corp.*, 572 N.W.2d 679, 684 (Mich. Ct. App. 1997).

hospitality or human resources management. (Pl.'s Dep. at 260-63, 280.) Plaintiff further conceded that she never managed a budget and would require training in a number of areas, including merchandise purchasing, handling a million dollar budget and marketing and retail analysis. (*Id.* at 254, 391-94, 401.) Plaintiff also admitted that someone reviewing her application could have concluded that she did not deserve an interview and agreed that it would be a "big jump" for her to go from office manager to corporate director. (*Id.* at 317, 380-81.) Plaintiff also denied that she was more qualified than any of the other applicants or that she could prove she would have obtained the position had she been interviewed. (*Id.* at 315-17.)

Kimberley Anderson, the successful applicant, had over twenty years of management experience while Plaintiff, who was a secretary until 1990, at most had fourteen years of management experience. (Pl.'s Dep. at 298-301.) In terms of total work experience, Anderson had twenty-eight years compared to Plaintiff's twenty. (*Id.* at 300.) According to Anderson's unrebutted affidavit, she had experience preparing and monitoring an annual budget of $2 million, planning and overseeing hospital-wide events and ensuring the integrity of the process for credentialing physicians. (Anderson Aff. at ¶¶, Def.'s Ex. 24.)

The court concludes that the record evidence presents no question of material fact, and that Defendant would not have promoted Plaintiff even if she had been interviewed; Defendant's assertion that race played no role in the promotion decision is borne out by Defendant's proffered admissible evidence and not called into question by anything presented by Plaintiff. Her claim of pretext lacks persuasiveness, given her admitted lack of qualifications for the position. Her additional arguments for pretext rely

on alleged inconsistencies in the statements of several of Defendant's witnesses and a claimed failure to follow a predetermined hiring process. These issues, however, are collateral and do not of their own accord make Plaintiff qualified for the promotion.

While Plaintiff had generally good performance evaluations, the evaluations in and of themselves do not demonstrate that she met the requirements of the promotion for a different position with different and greater responsibilities. The concessions in Plaintiff's deposition are fatal to her claim. Plaintiff attempts in her deposition to distinguish between total work experience and work experience in specific departments. But the job description did not require work in specific departments. Rather, it required work experience in certain areas, regardless of what job title or department assignment an applicant had. Plaintiff claimed she had the requisite five years, (Pl.'s Dep. at 261), but when asked about each specific area of expertise she admitted not having the required experience, (*id.* at 262). The court may not simply rely upon Plaintiff's subjective beliefs. *See*, *e.g.*, *Wexler v. White's Fine Furniture, Inc.* 317 F.3d 564, 589 n.17) (6th Cir. 2003). Her insistence that she should have at least been interviewed finds no support in the legal authority cited in her brief.

Plaintiff argues – to no avail – that Defendant must assert that it had "mixed motives" for *Price Waterhouse* to apply. Such is not the case. Further, any case where the parties argue whether direct evidence is present necessarily implicates a mixed motive analysis. In other words, either race was a factor or it was not. If it was, then the defendant may attempt to prove under *Price Waterhouse* that the outcome would have been the same absent the discrimination. Defendant has met its burden in arguing that the record evidence, ultimately, demonstrates that Plaintiff lacked the

necessary experience to merit an interview, much less an offer of promotion. She admitted that she did not have sufficient experience in key areas and said that she would need training in some required areas. Because Defendant had the right to choose among equally qualified candidates, *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 259 (1981), it could reject an unqualified candidate in favor of a better-qualified and more senior one. Under *Price Waterhouse* and *Manzer*, Defendants are entitled to summary judgment.

### C.  Constructive Discharge

Plaintiff's amended complaint alleges constructive discharge. As Plaintiff notes in her brief, constructive discharge is not a separate cause of action, but merely a defense against being precluded from bringing suit because Plaintiff voluntarily resigned. *See, e.g.*, *Vagts v. Perry Drug Stores*, 516 N.W.2d 102, 104 (Mich. Ct. App. 1994). Because Defendant has already succeeded on the central issue of racial discrimination in its argument for summary judgment, Plaintiff's allegations of constructive discharge are moot. They provide no independent basis for this court to deny summary judgment.

## IV.  CONCLUSION

IT IS ORDERED that Defendant's "Motion for Summary Judgment" [Dkt. # 17] is GRANTED.  A separate judgment will issue.

                    S/Robert H. Cleland  
                    ROBERT H. CLELAND  
                    UNITED STATES DISTRICT JUDGE

Dated:  April 30, 2007

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, April 30, 2007, by electronic and/or ordinary mail.

                    S/Lisa Wagner  
                    Case Manager and Deputy Clerk  
                    (313) 234-5522